UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALEXANDRA HOWARD,<br><br>*Plaintiff*,<br><br>v.<br><br>LESLIE'S POOLMART, INC., TRISTAN ORTIZ, CINDY EDWARDS, JENNIFER DEMAYO, AND SHAUNA VILLASENOR, in their individual and professional capacities,<br><br>*Defendants*. | Civil No. 3:22-cv-418 (JBA)<br><br>August 16, 2023 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Defendants Leslie's Poolmart, Inc. ("Leslie's"), Tristan Ortiz ("Mr. Ortiz"), Cindy Edwards ("Ms. Edwards"), Jennifer Demayo ("Ms. DeMayo"), and Shauna Villasenor's ("Ms. Villasenor"), all current or former employees of Leslie's, move [Doc. # 28] to dismiss all 12 counts of Plaintiff Alexandra Howard's Amended Complaint[1] [Doc. # 24] pursuant to 12(b)(1) and (12(b)(6). (Defs.' Mem. of Law in Support of Mot. to Dismiss [Doc. # 29] at 1.) Plaintiff was an Assistant Store Manager at the Milford, Connecticut Leslie's location, during which time she began a consensual sexual relationship with Defendant Ortiz, the Store Manager at the Fairfield, Connecticut Leslie's location. The Amended Complaint asserts a variety of statutory and common law claims arising from the alleged mistreatment of Plaintiff by Defendants after she ended the sexual relationship with Mr. Ortiz.

---

[1] Plaintiff filed her initial Complaint on March 21, 2022 and filed the operative Amended Complaint on September 22, 2022.

1

In her opposition brief [Doc. # 30], Plaintiff states she does not oppose dismissal of Counts Six, Seven, Eight, Nine, Eleven, and Twelve. (Pl.'s Opp'n at 1.) Thus, at issue here are only Counts One (Title VII – Discrimination based on Race, Color, and Sex), Two (Title VII - Retaliation), Three (42 U.S.C. § 1981 – Discrimination and Retaliation), Four (Conn. Gen. Stat § 46a60(A)(1) – Discrimination based on Race, Color, and Sex), Five (Conn. Gen. Stat § 46a60(a)(4) – Retaliation), and Ten (Intentional Infliction of Emotional Distress). Counts One, Two, Four, and Five are against Defendant Leslie's only, Count Three is against all Defendants, and Count Ten is against all individual Defendants.

## I. Background

Plaintiff Alexandra Howard is an African American woman who worked for Defendant Leslie's commencing on December 17, 2017, where she most recently held the position of Assistant Store Manager at the Milford Leslie's location. (Am. Compl. ¶¶ 16-18.) While serving in that position, Plaintiff began a sexual relationship with Tristan Ortiz, a Hispanic male Store Manager at the Fairfield Leslie's location, a relationship she terminated around the end of May 2020. (*Id.* ¶ 19.) Approximately two weeks after the end of that relationship, Plaintiff alleges she was subjected to a hostile work environment. (*Id.* ¶ 20.) Plaintiff alleges that "Mr. Ortiz would offer Plaintiff his assistance with a work-related task in exchange for sexual favors," that Plaintiff would be ignored and treated with hostility when trying to interact with the Fairfield store (where Mr. Ortiz was manager), and that Plaintiff received an item she had requested from the Fairfield location that featured a transfer slip addressed to "He who shall not be named," referring to Plaintiff. (*Id.* ¶¶ 21-26.) When Plaintiff sent an associate, Jared Klukas, to pick up an order from the Fairfield store, and he was mistreated by Fairfield Assistant Manager Kate Nadonly, Milford Store Manager Defendant Cindy Edwards, who witnessed this behavior, reached out to Mr. Ortiz regarding the incident. (*Id.* ¶¶ 26-27.)

On July 11, 2020, Plaintiff contacted Defendant Ortiz to "clear the air," but Defendant Ortiz was "verbally aggressive towards Plaintiff" on the call. (*Id.* ¶ 28.) Following the call, Plaintiff contacted her district manager, Defendant DeMayo, and informed her of Mr. Ortiz's behavior. (*Id.* ¶ 29.) Plaintiff informed Ms. DeMayo that Plaintiff intended to reach out to Human Resources (HR) and that she did not feel comfortable returning to work until HR was involved, but Ms. DeMayo stated she would reach out to HR for Plaintiff in order to follow the proper chain of command, and suggested that if Plaintiff herself reported to HR, it could affect both Plaintiff's and Mr. Ortiz's jobs. (*Id.* ¶¶ 29-31.)

On July 12, 2020, Ms. Edwards informed Plaintiff that Ms. DeMayo had contacted Mr. Ortiz and his Assistant Store Manager prior to contacting HR, at which point Plaintiff contacted Ms. Demayo and informed her that she did not feel comfortable coming to work due to the hostile work environment she was being subjected to. (*Id.* ¶¶ 33-34.) On July 13, 2020, Ms. DeMayo contacted Ms. Villasenor in HR, and Ms. Villasenor contacted Plaintiff seeking further information. Plaintiff explained her previous relationship with Mr. Ortiz, the harassment she was facing, and the impact the situation was having on her well-being and job performance. (*Id.* ¶¶ 35-37.) On July 14, 2020, Ms. Villasenor informed Plaintiff there was nothing HR could do about the situation, that Plaintiff should continue to have other employees call the Fairfield location as a remedial measure, and that Plaintiff was expected to appear for her next shift regardless of her discomfort from recent events. (*Id.* ¶¶ 38-40.) When Plaintiff advised she was uncomfortable returning to work until the matter was resolved, Ms. Villasenor threatened to hang up the phone and insisted Plaintiff return to work. (*Id.* ¶ 41.) Later on July 14, 2020, Plaintiff gave Ms. Villasenor her verbal resignation. (*Id.* ¶ 43.) On July 20, 2020, Plaintiff contacted Leslie's CEO (Michael Egeck), CFO (Steve Ortega) and Vice President of HR (Bobby Quihuis) informing them that she did not feel her situation was properly handled by Ms. DeMayo or Ms. Villasenor. (*Id.* ¶ 47.) Ms. Quihuis stated HR would investigate her claim, and Plaintiff provided HR with supporting

correspondence and evidence. (*Id.*) On August 25, 2020, Plaintiff received an email from Ms. Quihuis that HR's investigation was inconclusive (*Id.* ¶ 48.) and offering her $1000 if she would sign a Non-Disclosure Agreement (NDA) which stated Plaintiff could not sue Leslie's. (*Id.* ¶¶ 48-49.) Plaintiff responded on August 30, 2020 that she would not accept the NDA nor accept the offer of $1000, after which she ceased contact with Defendants. (*Id.* ¶¶ 49, 53.) Mr. Ortiz left Leslie's about a month after Plaintiff. (*Id.* ¶ 54.)

Plaintiff alleges she was discriminated against because she is Black, that Black woman are offered significantly less to sign NDAs with Leslie than non-Black women, that her complaints were not taken seriously because of her race, and that Leslie's "fosters a culture of racism, bigotry and favoritism" of non-Black employees. (*Id.* ¶¶ 58-62.) Plaintiff notes that all individuals who harassed her or who failed to protect her from harassment were not Black. (*Id.* ¶ 71.)

On September 4, 2020, Plaintiff was informed that her nine-year-old daughter, who resided with Plaintiff's mother in Texas, was in a coma with no brain activity due to medical complications. (*Id.* ¶ 72.) Plaintiff's daughter died on September 16, 2020. (*Id.* ¶ 76.) Plaintiff experienced severe mental and emotional distress in response to this tragic event, stating she was "immobilized by grief, guilt, anxiety, self-harm, mental suffering, suicidal ideation and depression" – a period of immobilization that Plaintiff says lasted until she was finally able to bury her daughter's ashes on April 13, 2021. (*Id.* ¶¶ 74-85.) Plaintiff also recounts that she was in a relationship with a domestic abuser starting in September 2020, which she reported to the police resulting in several arrests and restraining orders, most recently in August 2021 when Plaintiff's abuser broke into her home. (*Id.* ¶¶ 88-91.) That abuser is now incarcerated for his domestic violence crimes against Plaintiff. (*Id.* ¶ 92.)

On August 30, 2021, Plaintiff dual-filed a *pro se* complaint ("administrative complaint") with the Connecticut Commission on Human Rights and Opportunities (CHRO) and the Equal Employment Opportunity Commission (EEOC). (*Id.* ¶¶ 93-94.) The *pro se* administrative

complaint alleged discrimination on the basis of sex, sexual harassment in violation of CFEPA, Conn. Gen. Stat. § 46a-60, and Title VII of the Civil Rights Act of 1964. (CHRO Case No. 2230104 – EEOC No. 16A-2021-01372); (*Id.* ¶ 7.)[2] On December 22, 2021, the CHRO dismissed the Complaint, finding the Complaint was untimely, and issued a Release of Jurisdiction. (Am. Compl. ¶ 9.) The EEOC issued a Dismissal of Charge and Right to Sue on January 25, 2022. (*Id.* ¶ 8.)

## II.     Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would plausibly show that the plaintiff is entitled to relief, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007), by accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *See Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015).[3] However, this principle does not extend to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Because "only a complaint that states a plausible claim for relief survives a motion to dismiss," *Iqbal*, 556 U.S. at 679, a complaint must contain "factual amplification . . . to render a claim plausible*." Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). A complaint that only "offers 'labels and

---

[2] In considering this motion, the Court may consider Plaintiff's administrative complaint, as documents referred to and incorporated into a complaint are properly considered in connection with a motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

[3] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

conclusions'" or "naked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

"[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). In response to a motion to dismiss pursuant to Rule 12(b)(1), "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

### III. Discussion

#### A. Administrative Exhaustion

Defendants argue that the racial discrimination claims advanced in Counts One and Four, as well as the retaliation claims advanced in Counts Two and Five, must be dismissed because Plaintiff failed to exhaust administrative remedies. (Defs.' Mem. at 14-16.) Exhaustion "is an essential element of Title VII's statutory scheme." *Quinones v. Kohler Mix Specialties, LLC*, 2010 WL 1782030 at *2 (D. Conn. April 30, 2010); *see also* Conn. Gen. Stat. § 46a-100 (providing that a person who has obtained a release from the CHRO in accordance with § 46a–101 may bring an action to the superior court if the party has filed a timely complaint with the commission in accordance with Connecticut General Statutes § 46a–82.) Defendants point out that Plaintiff never made a race/color discrimination or retaliation claim before the CHRO or EEOC, and therefore failed to exhaust her administrative remedies requiring dismissal. (Defs.' Mem. at 15.)

Plaintiff argues that even if she failed to include claims before the CHRO and EEOC, she may still pursue such claims in federal court if those claims are "reasonably related to those that were filed with the agency." *Legnan v. Alitalia Linee Aeree Italianei S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). "Reasonably related" claims are recognized in three situations: (1) the alleged discriminatory conduct "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) the claim is one of "retaliation by an employer against an employee for filing an EEOC charge;" and (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003). Courts look at "factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving" to determine whether the claims are reasonably related. *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015). Defendants argue that complaints based on one protected class are not "reasonably related" to complaints based on another protected class. *See, e.g.*, *Pleau v. Centrix, Inc.*, 501 F. Supp. 2d 321, 326 (D. Conn. 2007) ("Moreover, courts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related."). But the Second Circuit has made clear this is a fact-intensive determination, holding that:

> "[I]f the factual allegations in the EEOC charge suggest two forms of discrimination—even though the charge itself specifies only one—so that the agency receives adequate notice to investigate discrimination on both bases, the claims are reasonably related to each other. This exception to the exhaustion requirement for reasonably related claims is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering."

*Littlejohn*, 795 F.3d at 322.

The question becomes whether, in this case, the facts alleged in Plaintiff's administrative complaints provided adequate notice to the agencies to investigate Plaintiff's race discrimination and retaliation claims where the administrative complaint makes no mention of race or color discrimination. Because the administrative complaint did not put the agencies on notice of any race or color discrimination claims, those portions of Count 1 and Count 4 are dismissed. By contrast, Plaintiff's retaliation claims are plausibly encompassed by her administrative complaint. Plaintiff's administrative complaint alleged that Ms. Demayo "encouraged [her] not to report anything to Human Resources, stating it could affect" her job. (CHRO Compl. ¶ 23.) This allegation plausibly puts the CHRO and EEOC on notice of the possibility of retaliation.

### B.     Statute of Limitations

Defendants argue that Counts One, Two, Four and Five should be dismissed as untimely because, under both Title VII and the CFEPA, a charge regarding the basis for a claim must be filed with the EEOC and/or CHRO within 300 days of the alleged discriminatory act, and Plaintiff did not dual-file her administrative complaint until August 30, 2021, a full year after the last interaction Plaintiff had with Defendants. The CHRO dismissed Plaintiff's Complaint as untimely, finding:

> The Complainant alleges that she resigned from her position on July 14, 2020 because of the Respondent's abusive and discriminatory behavior. For incidents which occurred after October 1, 2019, Connecticut General Statutes §46a-82(f) provides that "Any complaint filed pursuant to this section…shall be filed not later than three hundred days after the date of the alleged act of discrimination…". This complaint was filed on August 30, 2021; 412 days after July 14, 2020. Therefore, the allegations are untimely, and the complaint must be dismissed.

(Ex. A to Defs.' Mem (Rhinehart Decl.) Ex. 2 ¶ 5.)

Plaintiff argues the 300-day limitations period should be equitably tolled in light of her reaction to the tragic death of her daughter which occurred shortly after her departure from

8

Leslie's, as well as due to her struggles as a victim of domestic violence in that time period. Defendants argue that such tragic circumstances ultimately do not entitle Plaintiff to equitable tolling. (Defs.' Mem. at 11.)

"To determine whether equitable tolling is appropriate, a court considers whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Perez v. Harbor Freight Tools,* 698 F. App'x 627, 628 (2d Cir. 2017). Defendants observe that even after April 13, 2021, which Plaintiff notes as the end-date for the period in which she was immobilized by grief, Plaintiff still waited several months before dual-filing with the CHRO and EEOC in August.

But equitable tolling is appropriate "where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *See Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003), *as amended* (July 29, 2003). Plaintiff alleges that she went through a period of immense tragedy, disruption, and threats to her well-being in the time following her departure from Leslie's, with profound effects on her mental health. On September 4, 2020, just 10 days after HR informed Plaintiff that their investigation of her complaint would not provide redress, Plaintiff learned that her nine-year-old daughter was in a coma with no brain activity. (Am. Compl. ¶¶ 48, 72.) Following her daughter's death, Plaintiff suffered a prolonged period of mentally destabilizing and immobilizing grief until April of 2021 (*id.* ¶¶ 74-85) and was subject to threats of domestic violence as late as August 2021 (*id.* ¶¶ 88-91). Plaintiff filed her administrative complaint on August 30, 2021. (*Id.* ¶¶ 94.)  These allegations support a plausible claim that Plaintiff acted with reasonable diligence in light of her suffering from the sort of "extraordinary" circumstances meriting equitable tolling. "The Second Circuit has repeatedly admonished that questions of mental capacity should not be resolved on a motion to dismiss."

*Szuszkiewicz v. JPMorgan Chase Bank*, 12 F. Supp. 3d 330, 339 n.5 (E.D.N.Y. 2014) (citing *Stella v. Potter*, 297 Fed. Appx. 43, 46 (2d Cir. 2008) (summary order) (reversing dismissal pursuant to Rule 12(c) because the district court should have accepted plaintiff's allegation that his mental illness, depression, prevented him from timely notifying an EEOC counselor)). Defendants' motion to dismiss Plaintiff's claims as time-barred is denied.

### C. Hostile Work Environment

Counts One and Four of the Amended Complaint allege, in part, that Leslie's violated Title VII and the CFEPA by permitting a hostile work environment based on Plaintiff's sex/gender. (Am. Compl. ¶¶ 105-108, 127-132.) Defendants deny that the experiences suffered by Plaintiff rose to the level of seriousness necessary to constitute a hostile work environment. To state a claim for a hostile work environment, Plaintiff must adequately plead that she "subjectively perceived the environment to be abusive"; (ii) that "the environment was objectively hostile and abusive"; and (iii) "the extent to which the conduct occurred because of the plaintiff's membership in a protected class." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010). The same standard applies to both the federal and state claims. *See Craine v. Trinity College*, 259 Conn. 625, 637 n. 6 (2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both."). Plaintiff must allege facts plausibly showing "that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boonmalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018). "To determine whether an incident or series of incidents is sufficiently severe or pervasive to alter the conditions of a plaintiff's work environment [courts] must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Plaintiff's allegations of the hostile work environment focus on Ortiz's request for sexual favors in exchange for work-related assistance, his verbal aggression during the phone call with her, her receipt of an item from Ortiz's Fairfield location addressed to "He who shall not be named," and Fairfield location staff ignoring her. Defendants argue that these allegations are conclusory and not sufficiently severe or pervasive to constitute a hostile work environment.

Plaintiff has pled sufficient facts to allege a hostile work environment. To defeat a motion to dismiss hostile work environment claims "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). Plaintiff alleges that once she ceased having sex with Defendant Ortiz, he and his colleagues refused to cooperate with her on work-related matters, and Mr. Ortiz conditioned further work-related cooperation on Plaintiff having sex with him. Plaintiff complained of this conduct to HR and received no remediation other than being told to have her associates interact with the Fairfield store instead of doing so herself. These facts as pled plausibly support the conclusion that she was harassed continuously and in a manner such that "a reasonable employee would find the conditions of her employment altered for the worse." *Id.*

Defendants also point to Plaintiff's statement that she resigned from Leslie's only three days after complaining to Ms. DeMayo. "[I]f an employer is truly to be afforded an opportunity to remedy discrimination in the workplace, then surely the window of opportunity for such resolution must last longer than three days." *See Lupacchino v. ADP*, Inc., No. 3:02CV2281 (MRK), 2005 WL 293508, at *7 (D. Conn. Jan. 21, 2005). Here, prior to resigning, Plaintiff alleges more than an employer's failure to acknowledge her complaints;

11

she was informed by HR that there was nothing further to be done to rectify her situation. If an employee is informed that an employer has expressly decided against taking remedial action on her behalf, it makes little sense to say that employee ought to have stuck around waiting for the employer to change its mind. As such, Plaintiff's claim that she suffered a hostile work environment under Counts One and Four survive the Motion to Dismiss.

### D. Race/Color Discrimination

While Plaintiff's claims for race/color discrimination under Title VII and CFEPA are barred for failure to exhaust administrative remedies, Plaintiff also pleads race discrimination in Count Three alleging a violation of 42 U.S.C. § 1981. However, Plaintiff provides no allegations of any act of discrimination particularly tied to race or color, only noting that none of the Defendants are Black, and provides no legal authority for the proposition that the mere fact that she is Black and the Defendants are not constitutes sufficient grounds to maintain such a claim. Plaintiff's Amended Complaint is rife with conclusory statements regarding racial discrimination but offers no allegation illustrating any actual incident of racial discrimination, and thus Count Three is dismissed.

### E. Retaliation

Plaintiff's allegation that she was constructively discharged in retaliation for making her complaint is also too conclusory to adequately state a claim. "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [s]he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). Plaintiff pleads that she suffered an adverse employment action but fails to "plausibly plead a connection between the [adverse] act and [the plaintiff's] engagement in protected activity." *Id*.

To be sure, Plaintiff pleads that Defendants failed to take steps to remedy a hostile work environment – this is why Plaintiff has adequately pled her hostile work environment claim based on sex-based discrimination at this stage. But the failure of Defendants to remediate the harassment Plaintiff faced is not the same thing as retaliating against her because of her reporting that harassment. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000) ("As ineffective or even incompetent as [a manager's] handling of the matter may have been, it does not rise to the level of deliberate action required by our precedent [pertaining to constructive discharge]"); *Gonzalez v. New York State Dep't of Corr. Servs. Fishkill Corr. Facility*, 122 F. Supp. 2d 335, 346 (N.D.N.Y. 2000) ("[T]he Complaint alleges an ongoing course of discriminatory treatment by Reilly, which began before she ever complained about his conduct and continued thereafter, and the failure of DOCS and Fishkill to take appropriate remedial action. There simply are no factual allegations that Reilly, DOCS, or Fishkill acted, or failed to act, *because* Plaintiff complained about Reilly.") (emphasis added). Plaintiff has not pled sufficient allegations that Defendants "acted, or failed to act, *because* Plaintiff complained[.]" *Id.* As such, dismissal is warranted.

### F.   Intentional Infliction of Emotional Distress

"[I]n order to establish a claim for intentional infliction of emotional distress, the plaintiff must establish four elements: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Sepega v. Delaura*, 326 Conn. 788, 800 n.6 (2017). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hill v. Pinkerton Security & investigation Services, Inc.*,

977 F. Supp. 148, 159 (D. Conn. 1997). "[W]hether the defendants conduct may reasonably be regarded as extreme and outrageous is a question in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury." *Brown v. Town of East Haddam*, 213 F.3d 625, 2000 WL 536156, at *2 (2d Cir. May 2, 2000).

"Although conduct alleged to be sexual harassment and/or discrimination on the basis of a plaintiff's protected status often gives rise to a claim of IIED, the coexistence of the two claims does not establish that sexual harassment and/or discrimination is per se extreme and outrageous." *Sangan v. Yale Univ.,* No. 3:06CV587 (PCD), 2006 WL 2682240, at *5 (D. Conn. Sept. 15, 2006). Defendants argue that no reasonable jury could find that any of the alleged behaviors, including those alleging that Defendant Ortiz conditioned work-related assistance on sexual favors, rise to the high bar of "atrocious" behavior that is "utterly intolerable." *See, e.g.*, *Pottie v. Atl. Packaging Grp., LLC*, No. 3:12CV773 WIG, 2012 WL 6087282, at *3 (D. Conn. Dec. 6, 2012) (IIED claim legally sufficient when plaintiff alleged being physically struck in the head and face and "subjected to a course of verbal abuse and profanity, including being referred to by racially and ethnically derogatory names and asked what banana boat she came off."); *Morrissey v. Yale University*, 268 Conn. 426, 428 (2004) (rejecting IIED claim where plaintiff's co-worker and co-worker's boyfriend made repeated derogatory comments to plaintiff and, on one occasion, defendant pointed at plaintiff and said: "'[s]ooner or later I'm going to kick your f***ing a**").

Connecticut courts have generally concluded that in order for "acts relating to sexual conduct" to constitute IIED, they must be either "particularly egregious", *Majewski v. Bridgeport Bd. of Educ.*, No. CV030406893, 2005 WL 469135, at *19 (Conn. Super. Ct. Jan. 20, 2005), "continuous and constant," *Jacobson v. Int'l Tours & Events, LLC*, No. NNHCV095029826S, 2011 WL 3483606, at *10 (Conn. Super. Ct. July 11, 2011), or some combination of the two. *Compare Majewski,* 2005 WL 469135 (finding that several instances of unwanted hugging and kissing, in addition to inappropriate comments about sexual

orientation and sexual fantasies, did not rise to the level of IIED) *with Lin v. Yale Univ.,* No. CV 960384551S, 1998 WL 573250, at *3 (Conn. Super. Ct. Aug. 25, 1998) (finding that the plaintiff had sufficiently alleged an IIED claim where she alleged "daily, unwanted physical contact which was sexual, harassing and discriminatory in nature; a threatening statement regarding working after hours; and termination after reporting this behavior to her supervisor"). Although "the appalling conduct alleged in prior cases should not be taken mark the boundary of what is actionable", *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000), the instances of harassment described by Plaintiff—while unquestionably inappropriate, and sufficient to support her claim that her conditions of employment were altered for the worse—do not rise to the level of a continuous pattern of degrading or egregious conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hill*, 977 F. Supp. at 159 (D. Conn. 1997). As such, Plaintiff's Count Ten for intentional infliction of emotional distress is dismissed.

## IV.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED with respect to Plaintiff's sex/gender discrimination claims in Counts One and Four and is GRANTED with respect to all other counts.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of August 2023.